## MOORE v. SMITH et al.

ATKINSON, J.—1. Where an order for the speedy sale of personal
property levied on under an attachment was granted by a justice
of the peace, under the provisions of section 3648 of the code,
there having been no previous notice of the intention to apply for
the order, because it was impracticable to have such notice per-
fected, it was not essential to the validity of the order that it
should state the facts showing why the notice was not given. Ac-
cording to the ruling of this court in *Wilson* v. *Garrick et al.*, 72 *Ga.*
660, such an order granted by a justice of the peace was not ren-
dered invalid because it did not fully recite the facts authorizing
the sale; strictness of pleading not being required in justices'
courts.
2. The claimant having shown title in himself to the property levied
upon, and there being no evidence authorizing a finding to the
contrary, it was error to adjudge that the property was subject to
the plaintiffs' executions. *Judgment reversed.*

April 15, 1895. Brought forward from the last term.

Appeal. Before Judge HUNT. Spalding superior
court. January term, 1894.

Several executions founded on judgments rendered in
a justice's court on November 24, 1892, were levied on
a show-tent and fixtures as the property of Charles

Lagardo. Claims were interposed by J. P. Moore; and the cases, having been appealed to the superior court, were there consolidated and heard by the judge without a jury. He held the property subject, and the claimant excepted.

Claimant admitted possession in defendant in execution at the time of levy, and assumed the burden of proof. His evidence was, in brief, that on April 27, 1892, he sued out an attachment for $70 against Wyoming Frank, and caused it to be levied on the property now in question, which Frank had brought to Carrollton, where claimant resided. He was the owner of the opera house in that town, and Frank was indebted to him for rent of the same, and for board. He told claimant he had no money to pay him, and that claimant would have to make his money out of the tent and fixtures. On the same day on which the attachment was levied, the levying officer applied for a ten-day order of sale of the property as expensive to keep and liable to deteriorate; and such order was made by the justice who issued the attachment. On May 9, 1892, the property was sold at public outcry "under an order of court, after being legally advertised, and knocked off to J. P. Moore at twenty-five dollars, he being the highest and best bidder," as recited in an entry by the sheriff on the attachment, and as appears from claimant's testimony. It does not appear that any notice of the application for the order of sale was given to the defendant in attachment, or to any one else. Claimant testified, that at the time of applying for the order the defendant in attachment was in Nashville, Tenn., or on his way there, as he left on the early train for that point on the morning before suing out the attachment, and had instructed the depot agent at Carrollton to ship the tent and fixtures to him at Nashville, upon which information claimant sued out the attachment. If anything was omitted or

wrong in procuring the order for sale, he knew nothing of it. The property was worth two or three hundred dollars, but would not bring it at a sheriff's sale. Lagardo had no title to the property, and never had. He was in Carrollton, and had been there some time before Frank brought it there. Claimant held it some time after buying it at the sheriff's sale; and then Lagardo, who was without means, applied to him for the loan of it, to carry it to Griffin for the purpose of showing and making means by which he and his family could get back to their home in the northwest. Out of sympathy claimant let him have the property for said purpose, but had no interest in the show or the profits thereof. An old man named Hickcock, in whom claimant had confidence, was connected with Lagardo's company, and claimant requested him to keep him posted as to Lagardo's movements respecting the property. He let Lagardo have the property, believing that Hickcock would not let him injure it or remove it too far away, without letting claimant know about it; and claimant made Hickcock his confidant to this effect, and looked to him to keep claimant posted and protect him, having more confidence in him than in Lagardo.

The constable who made the levies now resisted, testified that when he did so Lagardo had gone and left the tent standing where he had erected it. Shortly afterwards, while he was taking down the tent, claimant approached and asked him what he was doing with the property, and said, " This is my property, and I don't want it taken down and packed away where it will injure." "I think," said the witness, "he said that he sold it to Lagardo but had not been fully paid for it. I am not positive, however. I won't be positive, but I think I heard Hickcock say that this show-tent and fixtures was Charles Lagardo's. I am not positive that he said the show was Lagardo's, or the show-tent and fixtures. I will not state positively which."

There was testimony by plaintiffs, that their judgments were for board of Lagardo and his company, for labor, and for rent of the ground where the tent stood; that Lagardo and Hickcock both said the property in dispute was Lagardo's; and that plaintiffs extended credit on the faith of those statements, and would not have done so but for them.

G. W. AUSTIN and ADAMSON & JACKSON, for plaintiff in error.

R. T. DANIEL and HAMMOND & CLEVELAND, *contra*.